UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                            |   |                      |
|----------------------------|---|----------------------|
| UNITED STATES OF AMERICA   | ) |                      |
|                            | ) |                      |
| v.                         | ) | No. 18-cr-10319-LTS  |
|                            | ) |                      |
| JOHN TAVARES,              | ) |                      |
|                            | ) |                      |
| Defendant.                 | ) |                      |

ORDER ON DEFENDANT'S OBJECTION TO § 851 NOTICE (DOC. NO. 90)

March 5, 2020

SOROKIN, J.

The government has filed a notice pursuant to 21 U.S.C. § 851 that it intends to seek increased punishment should John Tavares be convicted and sentenced in this case. Doc. No. 59. The notice cites Tavares's prior conviction in state court for a serious drug offense. Id. Tavares has objected to the notice. Doc. No. 90. For the reasons that follow, the Court OVERRULES Tavares's objections.

I.  BACKGROUND

   A.  The Federal Case

In September 2018, along with one co-defendant, Tavares was indicted on charges of conspiracy to possess with intent to distribute five kilograms or more of cocaine, and possession with intent to distribute 500 grams or more of cocaine. Doc. No. 28. Pursuant to 21 U.S.C. § 851, the government separately notified the Court that it intended to seek increased penalties as to Tavares based on one of two prior state-court convictions. Doc. No. 33. The government filed a Superseding Indictment in April 2019, which added allegations describing Tavares's prior drug conviction to the two counts charged against him. Doc. No. 57. The government also

superseded the separate § 851 notice, identifying only one prior state-court conviction as the basis for its request for an increased sentence.  Doc. No. 59.

Tavares opposed the § 851 notice and stated his intention to plead guilty to the federal charges, but to challenge the application of the sentencing increase the government wished to invoke.  Doc. No. 86.  On October 24, 2019, Tavares entered a guilty plea to both charges (conspiracy and possession with intent to distribute cocaine), and the Court scheduled further proceedings regarding his objections to the government's § 851 notice.  Doc. No. 87.

Thereafter, Tavares articulated two objections to the § 851 notice.  Doc. No. 90.  First, he claimed he had not served the requisite twelve months on the charge the government sought to invoke as a basis for a sentence increase.  Id. at 1-2.  Second, he attacked the state-court conviction under § 851(c)(2), urging that it was the result of a guilty plea that had not been entered knowingly and voluntarily.  Id. at 2-3.  The government opposed his objections, Doc. No. 100, and Tavares supplemented his objections with additional briefing and affidavits, Doc. Nos. 106, 108, 109.

At a January 31, 2020 status conference, Tavares's counsel notified the Court he was abandoning the first of his challenges to the notice.  The Court accepted counsel's representation and memorialized it in a post-conference Order, finding the challenge to the amount of time Tavares had served was waived.  Doc. No. 117 at 2-3.  The Court scheduled an evidentiary hearing as to the only remaining objection—the voluntariness of the state-court guilty plea.  Id.

At the hearing on February 25, 2020, the Court conducted a colloquy of Tavares to confirm he understood and agreed with his counsel's decision to waive the first of his two objections to the § 851 notice, and that he admitted the government could prove beyond a reasonable doubt the three elements necessary to establish a "serious drug felony" for purposes

of § 851 and the First Step Act. Thereafter, the hearing focused on the challenge to Tavares's guilty plea and featured argument by counsel. Tavares elected not to testify or offer other evidence in support of his challenge. The Court conducted another colloquy of Tavares to confirm he understood his burden of proof and had knowingly and voluntarily decided to proceed in this fashion.

The Court took the matter under advisement at the conclusion of the hearing and allowed Tavares's request to submit a supplemental memorandum of law thereafter. Doc. No. 122. Tavares made no such submission, however, and the deadline his counsel suggested (and the Court imposed) has now passed.

B.      The Prior State Proceedings

The government's § 851 notice relies on a case that began in Suffolk Superior Court in 2008. Doc. No. 59. That October, Tavares entered a guilty plea to three counts in a six-count indictment. Doc. No. 100-3 at 3, 7. The count that is relevant for present purposes charged "Trafficking in Cocaine in Excess of 28 Grams"; Tavares pled guilty to that charge, but with the amount of cocaine reduced from twenty-eight to fourteen grams. Id. at 7; Doc. No. 100-2 at 4; Doc. No. 100-4 at 2. Tavares was sentenced to four-to-six years' incarceration, with credit for 224 days served before imposition of sentence. Doc. No. 100-3 at 7; Doc. No. 100-4 at 2. He was released in May 2012, having served more than four years in prison. Doc. No. 100-5 at 9.

In the wake of the scandal involving a chemist at the Hinton Drug Testing Laboratory in Jamaica Plain, Tavares filed a motion for a new trial in state court in 2013 challenging his convictions as having rested on evidence tainted by the chemist's misconduct. Doc. No. 100-3 at 9. The state court scheduled a hearing for July 9, 2014, at which time Tavares entered a guilty plea. Id. at 11. The plea was the result of negotiation between Tavares, who was represented by

3

counsel, and the Commonwealth. Doc. No. 100-1 at 4-9. The parties agreed that Tavares would withdraw his post-conviction challenges to the four firearms charges that were part of the case, in exchange for the Commonwealth reducing the drug trafficking charge to the lesser-included offense of possession with intent to distribute cocaine, to which Tavares would plead guilty. Id. at 4-9. The parties further agreed that the same sentence would be imposed as to the new charge, and that the sentence would be "deemed served." Id. at 8-9, 18-19; Doc. No. 100-3 at 11.

In connection with the plea, Tavares signed two written waiver forms: a standard form waiving various trial rights and stating that his guilty plea was made voluntarily after consultation with counsel, Doc. No. 100-7; and a form specific to cases arising from the state drug lab scandal waiving legal challenges arising from the scandal and stating that his decision to do so was made voluntarily and after consultation with counsel, Doc. No. 100-8. He similarly confirmed the voluntariness of his plea and his understanding of the rights he was giving up as a result of his decision to plead guilty during a colloquy by the judge who presided over the state-court hearing at which he entered the plea. Doc. No. 100-1 at 8-25.

    C.    <u>The Evidentiary Hearing</u>

At the hearing before this Court on his objections to the § 851 notice, Tavares offered no evidence. Instead, he relied on an affidavit he filed (and later corrected) with his written submissions regarding his objections to the § 851 notice. Doc. No. 106-3; Doc. No. 108. In his affidavit, Tavares described the relevant state charges, his 2008 plea to four of the six related indictments, and his original sentence. Doc. No. 106-3 ¶¶ 1, 4-5. He noted the state drug lab scandal and affirmed that "only 4.63" of the "approximately 36 grams" of cocaine seized in his case had not been analyzed by the chemist involved in the scandal. Id. ¶¶ 2-3, 10. After the scandal came to light, Tavares sought a new trial in state court, eventually agreeing to plead

4

guilty in 2014 to a lesser-included drug offense on the same day the state prosecutor agreed that Tavares's post-trial motion should be allowed as to the drug offense. Id. ¶¶ 7-8. He received the same sentence imposed in 2008, but it was "deemed served." Id. ¶ 9.

According to Tavares's affidavit, he had attended "several different hearings" in a "specially constituted 'drug lab court' in Suffolk Superior Court" before entering his 2014 plea. Id. ¶ 11. On those occasions, he observed that the prosecutors assigned to such court session "were often very aggressive and belligerent . . . , stating that they would prosecute to the full extent of the law" anyone who rejected a plea offer and proceeded to trial following a successful motion for a new trial. Id.; Doc. No. 108 ¶ 2. As a result of his observations, Tavares claims he was "concerned and unnerved," and that though he "was more than willing to go to trial on the cocaine charges believing [he] had a good chance of nullifying the amounts [the corrupt chemist] had tainted," he "was extremely upset and afraid of facing the firearm charges and possibly receiving on and after sentencing on some or all of them." Doc. No. 106-3 ¶ 12. Per Tavares, this fear of "vindictive sentencing" was "[t]he primary reason why [he] re-pled guilty to the slightly lesser trafficking charge on July 9, 2014." Doc. No. 106-3 ¶ 13; Doc. No. 108 ¶¶ 3-4.

In addition, Tavares cited an affidavit from Benjamin Selman, an attorney with the Committee for Public Counsel Services ("CPCS"), which Tavares had submitted along with his written opposition to the § 851 notice. Doc. No. 106-4. Selman was assigned to a CPCS unit tasked with seeking relief for defendants whose cases involved evidence tested by the chemist whose misconduct was at the center of the state drug lab scandal. Id. ¶¶ 1, 3. His affidavit describes prosecutors faced with new-trial motions in such cases as generally taking the position that defendants who prevailed on such motions would face re-prosecution on all counts of the indictment as originally charged. Id. ¶¶ 6-7. Selman had some clients proceed with new-trial

5

motions despite understanding that policy, while other clients decided not to pursue such motions or accepted re-plea deals to time-served "in part or whole due to fear of re-prosecution and the threat of additional prison time." Id. ¶ 8.

Selman did not represent Tavares, and his affidavit contains no factual assertions specific to Tavares's case or to proceedings at which Tavares was present. Nor does Tavares's affidavit contain factual assertions about specific threats or statements made to him or his state-court lawyer about his own case by prosecutors responding to his new-trial motion.

The government objected to the Court's consideration of the affidavits because neither Tavares nor Selman testified subject to cross-examination. In a post-hearing submission, the government cited two decisions of the First Circuit in support of its objection to the consideration of Tavares's affidavits. Doc. No. 123. The Court took the government's objection under advisement.

Relying on the affidavits and citing the seriousness of the state drug lab scandal, its ramifications, and state-court decisions attributing the relevant misconduct to the Commonwealth, Tavares's counsel urged that the circumstances here justify finding the 2014 guilty plea involuntary despite Tavares's signed waivers and sworn colloquy. He also sought leave to file a brief supplemental memorandum addressing the Bridgeman v. Dist. Attorney for the Suffolk Dist., 30 N.E.3d 806 (Mass. 2015). Tavares made no such submission, but the Court has reviewed and considered the extent to which Bridgeman bears on the issues pending here.

II. LEGAL STANDARDS

An individual who knowingly or intentionally possesses with intent to distribute five hundred grams or more of cocaine faces increased penalties if the violation occurs "after a prior conviction for a serious drug felony . . . has become final." 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii),

6

(b)(1)(B)(ii). A "serious drug felony" includes possessing with intent to distribute a controlled substance in violation of a state law providing for "a maximum term of imprisonment of ten years or more," if "the offender served a term of imprisonment of more than 12 months" and was released "within 15 years of the commencement of the instant offense." § 802(57); accord 18 U.S.C. § 924(e)(2).

Pursuant to 21 U.S.C. § 851(a)(1), the government must file an information "stating in writing the previous convictions to be relied upon" if it intends to seek increased punishment based on such convictions. In response to a submission by the government under § 851(a), a defendant may either affirm or deny the previous conviction identified therein. § 851(b). If he denies the conviction, he must "file a written response to the information," and the Court must "hold a hearing to determine any issues raised by the response which would except the person from increased punishment." § 851(c)(1). "[E]ither party may introduce evidence," but the government bears "the burden of proof beyond a reasonable doubt on any issue of fact." Id.

If a defendant challenges a prior conviction identified by the government on the basis that it "was obtained in violation of the Constitution of the United States," he must say so in his written response, and, at the subsequent hearing, he bears "the burden of proof by a preponderance of the evidence on any issue of fact raised by the response." § 851(c)(2). As both parties have agreed, challenges of this nature are resolved by the Court, without a jury.

III. DISCUSSION

    A. Tavares's Prior Conviction Was a Serious Drug Felony

Tavares has always conceded that the prior conviction identified by the government in its § 851 notice satisfied two of the three prerequisites for a "serious drug felony" under § 802(57). In particular, the relevant offense was possession with intent to distribute a controlled substance

7

for which Massachusetts law provides a maximum term of imprisonment of at least ten years, United States v. Barbosa, 896 F.3d 60, 74-75 (1st Cir. 2018), and Tavares was released from the relevant sentence within fifteen years of the conduct giving rise to the pending federal charges, Doc. No. 100-5 at 9.  Originally, Tavares disputed the government's ability to prove the remaining requirement under § 802(57), arguing he had not served more than twelve months in custody arising from the identified state-court conviction.  Doc. No. 90 at 1-2.  This challenge turned on the manner in which the state-court judge had imposed her sentence following the 2014 guilty plea.

Because Tavares already had served the entire four-to-six-year sentence originally imposed in connection with the same set of indictments, the judge imposed the same sentence in 2014 but said it was "deemed served."  Doc. No. 100-1 at 18; Doc. No. 100-3 at 11; accord Doc. No. 100-1 at 22 (characterizing the sentence as "an agreed to sentence to time already served").  In this Court, Tavares urged that time he served from 2008 until 2012 constituted "dead time" that could not have been credited toward any sentence imposed after his 2014 plea, such that in Tavares's view, he actually had served no time at all in connection with the conviction at issue here.  Doc. No. 90 at 1-2.  The government opposed this view.  It cited the transcript of the 2014 plea hearing and state law to explain why Tavares's plea to a lesser-included offense on the very same indictment that was the basis for his original plea and sentencing (as a result of which he plainly did serve more than twelve months in custody) not only appropriately, but necessarily, incorporated the stated intent of the state court and the parties to the negotiated plea agreement that the time Tavares previously served would be credited to the sentence imposed following his July 2014 plea.  Doc. No. 100 at 10-14.

Ultimately, Tavares gave up this challenge to the § 851 notice and conceded the government could prove all three elements required to establish that the cited conviction qualifies as a "serious drug felony." Tavares confirmed this decision under oath in a colloquy by the Court at the February 25, 2020 hearing. The Court finds Tavares made this choice and admitted the sufficiency of the government's proof knowingly and voluntarily, reserving only his constitutional objection to the underlying state-court plea.

Accordingly, the Court concludes Tavares has waived his challenge to the government's proof that he served more than twelve months' imprisonment on the identified state-court offense. Even if he had not relinquished this challenge, the Court would overrule it on its merits. The Court has carefully reviewed the parties' submissions and, in particular, the transcript of the 2014 plea hearing in state court. On this record, the Court finds no support for the interpretation of those proceedings urged by Tavares; it would instead endorse and adopt the characterizations of fact and law adeptly presented by the government in its opposition brief insofar as this objection is concerned.

B.  Tavares's Plea Was Knowing and Voluntary

The hearing in this Court focused on Tavares's only remaining challenge to the § 851 notice—his contention that his 2014 guilty plea was neither knowing nor voluntary, rendering the resulting conviction constitutionally infirm. Doc. No. 90 at 2-3. In particular, Tavares contends that he agreed to plead guilty and relinquish the challenges to his original conviction stated in his motion for a new trial because he feared "that he could face greater charges or receive a greater sentence if he elected to go to trial after the 2008 guilty plea was vacated." Id. at 2; see Doc. No. 109 at 2 (arguing Tavares entered the plea because he "reasonably believed at the time . . . that he would be punished by draconian sentences if he was unsuccessful on

9

retrial"). According to Tavares, this fear arose from "very aggressive and belligerent" threats he heard prosecutors make to other similarly situated defendants in the aftermath of the state drug lab scandal, and he urges its reasonableness is demonstrated by a state public defender's own observations of the positions taken by state prosecutors in such cases. Doc. No. 109 at 4-6.

Having considered the parties' submissions and arguments, the Court finds that Tavares has not established by a preponderance of evidence that his 2014 guilty plea was involuntary. Several factors dictate this conclusion.

First, Tavares contemporaneously affirmed the voluntariness of his plea at least three times in July 2014—twice in writing and once under oath in a court of law. He signed two waiver forms avowing: "My guilty plea [and my waiver of my rights on these charges and cases] is not the result of force, threats, assurance or promises. I have decided to plead guilty [and waive my rights on this case] voluntarily and freely . . . ." Doc. No. 100-7 at 2; Doc. No. 100-8 at 3. One of the forms further declared: "I am giving up and waiving the various rights discussed herein knowingly, voluntarily and intelligently." Doc. No. 100-8 at 4. The same form, in fact, expressly acknowledged and relinquished "the right to file a motion to vacate this guilty plea based on information that may come to light in the future about the state [drug] laboratory." Id. at 3. Tavares initialed each paragraph of that form, including one avowing that his decision to waive any future challenge to his guilty plea was voluntarily and freely made. Id.

When he completed these forms, Tavares was twenty-seven years old, had a GED, and was able to read and understand English. Doc. No. 100-1 at 12-14. At the guilty plea hearing, the state-court judge placed Tavares under oath and engaged in a lengthy colloquy, id. at 11-25, which included the following exchanges:

> THE COURT: Has anyone forced you to plead guilty?
>
> [TAVARES]: No, Your Honor.

>           *       *       *
>
> THE COURT:        And are you pleading guilty because you are guilty?
>
> [TAVARES]:        Yes.
>
>           *       *       *
>
> THE COURT:        Did [your lawyer] or anyone else force you to sign [the waiver] form?
>
> [TAVARES]:        No.
>
> THE COURT:        And did you sign it knowingly and voluntarily?
>
> [TAVARES]:        Yes.

Id. at 23-25.  Thereafter, the state-court judge accepted the plea, finding it was "given knowingly, voluntarily, and intelligently, with knowledge of consequences of the plea."  Id. at 25-26.

"[S]tatements in open court during a plea hearing," such as those Tavares made in his colloquy with the state-court judge endorsing those reflected in the two written waivers he signed and submitted to the state-court judge, "'carry a strong presumption of verity.'"  United States v. Martinez-Molina, 64 F.3d 719, 733 (1st Cir. 1995) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)); accord United States v. Marrero-Rivera, 124 F.3d 342, 349 (1st Cir. 1997).  Nothing Tavares has offered here overcomes that presumption.  His affidavit says nothing about the contradiction between his present claim of involuntariness and his July 2014 waivers and sworn testimony declaring he was proceeding voluntarily.  Even had he said in his affidavit that the same fear Tavares now claims motivated his decision to plead guilty also caused him to give false written and oral assurances in 2014, such a claim would not overcome the presumption of truthfulness that attaches to statements made under oath when entering a guilty plea.  To accomplish that, Tavares would have to offer "credible, valid reasons why a departure from those earlier contradictory statements is now justified."  United States v. Butt, 731 F.2d 75, 80 (1st Cir.

11

1984).  He has not done so.  Where he has offered no evidence that any prosecutor made threatening or improperly coercive statements to him during his own plea negotiations, Tavares simply has not overcome the presumption that this Court should credit his assurances to the state court regarding the voluntariness of his plea.

<u>Second</u>, even considering the affidavits Tavares has submitted, his assertion of involuntariness essentially reduces to the following claim:  Tavares decided to plead guilty in 2014 in order to avoid the risk of facing more serious charges or a longer sentence after a trial; had he known that the state courts would later decide that defendants in his position could not lawfully be charged with more serious offenses than those of which they originally were convicted, or receive sentences more severe than those originally imposed, he would not have made the same decision.  But this is the same choice faced by criminal defendants in courtrooms across this country every day.  Even adding to the mix the extraordinary scope and impact of the state drug lab scandal, the fears identified by Tavares here are insufficient to support a finding by this Court that his 2014 plea was involuntary.  <u>See</u> <u>United States v. Brady</u>, 397 U.S. 742, 757 (1970) ("[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."); <u>United States v. Broce</u>, 488 U.S. 563, 572 (1989) ("[T]he possibility that [a defendant's] plea might have been influenced by an erroneous assessment of the sentencing consequences if he had proceeded to trial did not render his plea invalid.").

<u>Third</u>, Tavares was represented by counsel in state court when litigating his motion for a new trial, negotiating with state prosecutors, and entering his guilty plea.  Tavares has not suggested, let alone established, that his lawyer was constitutionally ineffective in advising and advocating for him at any of those junctures.  <u>See</u> <u>Butt</u>, 731 F.2d at 80 (requiring allegations

"sufficient to state a claim of ineffective assistance of counsel" in order to overcome the presumption that statements in a plea colloquy were truthful).

Fourth, Tavares has not claimed he is innocent of any of the charges to which he pled guilty, nor would the record support such a finding by this Court. The factual proffer underlying his plea—which Tavares agreed under oath was true—established that cocaine, evidence of drug distribution (a digital scale and plastic baggies), a firearm with ammunition, and a large amount of cash (which Tavares intended to use "to re-up on the drugs") were recovered by police in his room and on his person. Doc. No. 100-1 at 16-18, 23. And, as Tavares concedes, not all of the cocaine seized from his home was tested by the chemists involved in the scandal. Doc. No. 106-3 ¶ 10; Doc. No. 108 ¶ 1. Besides challenging the tainted evidence, he has not identified a defense he wished to pursue at trial or otherwise explained how he believes he would have challenged the proffered facts, even setting aside his admission that those facts were accurate. Cf. Doc. No. 106-3 ¶ 12 ("I was more than willing to go to trial on the cocaine charges believing I had a good chance of nullifying the amounts [the corrupt chemist] had tainted . . . ." (emphasis added)).

Finally, the Court notes that Tavares has never contested the voluntariness of his 2014 plea in any state court. Though § 851(c)(2) does not appear to incorporate the usual procedural prerequisites that petitioners must satisfy before seeking federal-court review of constitutional challenges to state criminal convictions, cf. 28 U.S.C. § 2254(b)(1) (limiting federal habeas review of challenges to state convictions and sentences to cases in which petitioners have first exhausted remedies available in state court, or cases in which the state provides no process or only an ineffective process to review and correct the alleged violations), the same principles of comity which justify such prerequisites in other contexts appear equally relevant here. In any

event, Tavares's failure to challenge his plea previously—in state court or elsewhere, including in the wake of the 2015 Bridgeman decision upon which he now relies—seriously undermines the credibility of his assertion that the plea arose solely due to his fear of angry and vindictive prosecutors, and was not the voluntary decision he acknowledged in writing and under oath before the state court.

For these reasons, the Court finds Tavares has not sustained his burden of proof as to the constitutional challenge he raised regarding the conviction cited in the § 851 notice. This is so even if the Court considers the affidavits he submitted. As such, the Court need not resolve whether such affidavits may constitute evidence in a proceeding under § 851 in the absence of live testimony by the affiants, and the government's objection in this regard is OVERRULED AS MOOT.

IV. CONCLUSION

Because Tavares has waived his challenge to the government's proof of a prior "serious drug felony," and because the Court concludes that Tavares has not established by a preponderance of evidence that his 2014 guilty plea was involuntary or coerced, Tavares's objections to the superseding § 851 notice are OVERRULED.

As a result of his guilty plea before this Court in this case, he stands convicted of conspiracy to possess with intent to distribute, and possession with intent to distribute, cocaine as charged in Counts 1 and 3 of the Superseding Indictment. The Court will proceed to sentencing in this matter as already scheduled, on June 22, 2020 at 2:30 PM in Courtroom 13. The Clerk shall provide a copy of this Order to United States Probation.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge
